UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| In re:  )<br>)<br>LOCATEPLUS HOLDINGS CORPORATION, )<br>)<br>Debtor.  )<br>_____) | Chapter 11<br>Case No. 11-15791 |
| In re:  )<br>)<br>LOCATEPLUS CORPORATION,  )<br>)<br>Debtor.  )<br>_____) | Chapter 11<br>Case No. 11-15793 |
| In re:  )<br>)<br>DATAPHANT, INC.,  )<br>)<br>Debtor.  )<br>_____) | Chapter 11<br>Case No. 11-15794 |
| In re:  )<br>)<br>CERTIFION CORPORATION,  )<br>)<br>Debtor.  )<br>_____) | Chapter 11<br>Case No. 11-15795 |
| In re:  )<br>)<br>EMPLOYMENT SCREENING PROFILES,  )<br>INC.,  )<br>)<br>Debtor.  )<br>_____) | Chapter 11<br>Case No. 11-15797 |
| In re:  )<br>)<br>WORLDWIDE INFORMATION, INC.,  )<br>)<br>Debtor.  )<br>_____) | Chapter 11<br>Case No. 11-15798<br><br>*Joint Administration Request Pending* |

**MOTION FOR AUTHORIZATION OF (1) THE INTERIM AND PERMANENT
USE OF CASH COLLATERAL, (2) THE GRANTING OF REPLACEMENT
LIENS, (3) ENTRY OF SCHEDULING ORDER REGARDING
<u>CONTINUED USE OF CASH COLLATERAL AND (4) ADDITIONAL RELIEF</u>**
*(Emergency Determination Requested)*

Pursuant to Sections 105 and 363 of the United States Bankruptcy Code (the "Bankruptcy Code"), Federal Rules of Bankruptcy Procedure 2002, 4001, and 9014, and MLBR 4001-2, LocatePLUS Holdings Corporation ("LPHC"), LocatePLUS Corporation ("LocatePLUS"), Dataphant, Inc. ("Dataphant"), Certifion Corporation a/k/a Entersect Corporation ("Certifion"), Employment Screening Profiles, Inc. d/b/a TruBackgrounds ("TruBackgrounds") and Worldwide Information, Inc. ("Worldwide") (collectively the "Debtors"),[1] hereby move this Court for the entry of an order authorizing the use of Cash Collateral (as defined below) to maintain the value of the Debtors' property through continued operations in the ordinary course of business. The Debtors request:

(i) The entry of an interim Order authorizing the use of Cash Collateral on an emergency basis in an amount necessary to avoid immediate and irreparable harm;

(ii) The entry of a permanent Order authorizing use of Cash Collateral in the ordinary course of business;

(iii) The granting of replacement liens to parties asserting liens on Cash Collateral to the extent described in this motion; and

(iv) The entry of an Order setting a final hearing date on the continued use of Cash Collateral.

The Debtors are providers of public and private data to businesses and credentialed clients throughout the United States. The Debtors require the use of Cash Collateral to continue their operations while they reorganize their businesses. Immediate relief is necessary to prevent any interruption in the Debtors' business, and the services they provide to law enforcement agencies, investigative professionals, human resource professionals, insurance companies, law firms and other clients.

---

[1] The Debtors have, simultaneously with this motion, moved for the joint administration of these cases.

2

In further support of this motion, the Debtors state as follows:

## I. BACKGROUND

2.  On June 16, 2011 (the "Petition Date"), the Debtors filed voluntary petitions under Chapter 11 of 11 U.S.C. § 101, *et seq.* ("Bankruptcy Code") with this Court.

3.  The Debtors continue to operate as debtors-in-possession pursuant to Sections 1107 and 1108 of the Bankruptcy Code and no trustee or committee has been appointed in these cases.

### A. The Debtors and Their Businesses.

4.  The Debtors provide various types of public and private data to business and credentialed clients throughout the United States.

5.  LPHC, a corporation organized under the laws of Delaware and with a principal place of business in Beverly, Massachusetts, is a holding company that owns one hundred percent (100%) of the equity interests of the other Debtors. LPHC provides accounting, finance, legal, risk management, information technology, strategy analysis, sales and marketing, operations and management services in various forms to its subsidiary companies.

6.  LocatePLUS, a corporation organized under the laws of Delaware, provides web-based investigative search and background screening products for credentialed corporate, government and law enforcement clients as well as private investigators, legal professionals, private investigators, bail bondsmen, collection and security agencies and insurance companies. Information is used by these users for various activities ranging from legal discovery to the detection of fraud and the prevention of crime and terrorism. Commercial businesses have increasingly availed themselves of these information services in connection with their identity validation and other business decisions. The LocatePLUS flagship products – LocatePLUS Pay-per-click (PPC) and LP Police – empower businesses and government agencies with real-time

web access to a wide range of public and proprietary databases to verify personally identifiable information on the US adult population.

7.  Dataphant, a corporation organized under the laws of Delaware, provides information on land and mobile phone numbers in the United States. Dataphant leverages a proprietary process to gather and analyze phone numbers from mobile and landline sources and map those numbers to phone owners and addresses. Dataphant phone information is used by credentialed investigative and law enforcement customers throughout the U.S and Canada. The information is available to all business and consumer markets, but the primary markets for this information remains in the government and law enforcement arena.

8.  Certifion, a corporation organized under the laws of Delaware, provides Web-based and off-line public information databases that allow investigative professionals to verify the authenticity of a subject's background. Certifion's products include Entersect Police Online (EPO) and Entersect HR. Entersect Police Online (EPO) delivers telephone and address information to empower local and state police as well as federal agents to conduct more thorough investigations resulting in swift actions in the field. Access to EPO is restricted to law enforcement agencies. Entersect HR provides tools for the recruiter, employer, and hiring consultant who are charged with the duty to screen candidates. Entersect HR empowers human resource professionals to make better, more informed decisions based on the verified backgrounds of potential and existing associates.

9.  TruBackgrounds, a corporation organized under the laws of Florida, develops and markets integrated, customized, web-enabled background verification solutions designed to aid human resource professionals in the verification and management of employment applications. The company serves large and small businesses with systems and information that enable better

decisions and reduced costs via automation of the screening process. Solutions are sold to all businesses that are in need of background screening products, including education and employment verification, criminal and civil records, motor vehicle records, SSN verifications, and professional license checks.

10. Worldwide, a corporation organized under the laws of Delaware, provides CD-ROM and DVD products for effectively identifying motor vehicle, driver's license, harbor records and unlisted cell phone records. Worldwide distributes software products containing statewide motor vehicle records that provide identity validation services to law enforcement, law offices and other accredited businesses. Worldwide's search products increase the success rate of identifying or locating critical persons when only a minimal amount of information is available. The ability to search partial data is a valuable tool in circumstances in which incomplete information is available, as is often the case in criminal investigations. Unlike web-based search products, Worldwide's CD/DVD-based software can be accessed from anywhere without the need for an internet connection or phone signal. Worldwide products are useful in solving police cases involving missing persons associated with partial vehicle information.

B. **Events Precipitating The Bankruptcy Filings.**

11. As further described below, in 2007, LPHC issued a secured convertible debenture (the "Debenture") to Cornell Capital Partners (now YA Global Investments, L.P.) in the aggregate principal amount of $6,000,000 of which $3,000,000 was advanced. The Debenture is currently held by Gulabtech, LLC ("Gulabtech").

12. LPHC and Gulabtech entered into extensive negotiations with respect to restructuring the Debenture debt but were unable to reach an agreement. On June 3, 2011, Gulabtech initiated foreclosure proceedings. Gulabtech's actions forced LPHC and the other

Debtors to file their bankruptcy petitions to preserve the going concern value of their businesses and restructure their debts in a manner most advantageous to all parties in interest.

## II. SECURED CLAIMS ASSERTED AGAINST THE DEBTORS

### A. Gulabtech's Claims.

13. On or about March 20, 2007, LPHC issued the Debenture to Cornell Capital Partners (now YA Global Investments, L.P.) in the aggregate principal amount of $6,000,000, of which $3,000,000 was apparently initially advanced. The second installment of $2,000,000 was apparently scheduled to be advanced in conjunction with the filing by LPHC with the Securities and Exchange Commission of a Registration Statement. The last installment of $1,000,000 was to be advanced immediately prior to the date the Registration Statement was declared effective by the Securities and Exchange Commission. LPHC received a letter dated December 6, 2007 from YA Global Investments, L.P. notifying LPHC of certain alleged events of default under the Debenture, and the remaining $3,000,000 was apparently never funded. As of March 31, 2011, the asserted claim against LPHC with respect to the Debenture is $3,402,000, comprised of an outstanding principal balance of $2,713,000 plus accrued interest of $689,000.

14. On March 21, 2011, YA Global Investments, L.P. notified LPHC that it had agreed to assign the debenture to Gulabtech. On March 30, 2011, YA Global Investments, L.P. advised LPHC that it had completed the assignment to Gulabtech.

15. Gulabtech asserts a security interest in substantially all of the assets of LPHC, LocatePLUS, Entersect, Worldwide and Dataphant. Gulabtech does not hold a security interest in the assets of TruBackgrounds.

**B.    Derrick Spatorico's Claims.**

16.    Derrick Spatorico, a board member of the Debtors and former principal of TruBackgrounds, has asserted a lien against substantially all of the assets of LPHC and TruBackgrounds. As of the date of this Motion, the Debtors are unaware of the basis for such asserted lien. To the extent that Mr. Spatorico holds a valid lien, he has assented to the requested use of cash collateral.

### III.    REQUESTED USE OF CASH COLLATERAL

17.    The Debtors request the use of cash collateral, as that term is defined in Section 363(a) of the Bankruptcy Code, including without limitation, all cash in the Debtors' various bank accounts (collectively the "Cash Collateral").

18.    Attached hereto as Exhibit A are consolidated and individual budgets for the Debtors operations (collectively the "Budget"). The Budget sets forth estimated receipts and disbursements for the week ending June 24, 2011 through September 7, 2011 (the "Budget Period"). As the Budget demonstrates, the Debtors have sufficient Cash Collateral to fund their operations during the Budget Period.

19.    Approval of the use of the Cash Collateral on the terms set forth in this motion is in the best interests of the Debtors, the Debtors' estates and their creditors. The use of Cash Collateral will enable the Debtors to pay post-petition obligations, maintain the continuity of the data services they provide and preserve the Debtors' reputation and existing clients while the Debtors reorganize.

20.    Absent the use of the Cash Collateral, the Debtors would be required to cease operations, resulting in a disruption of services to clients, and significant diminution of value of

the businesses to the detriment of all parties - the Debtors, the Debtors' estates, secured creditors and all other creditors and interest holders.

## IV.    ADEQUATE PROTECTION

21.    Section 363(e) of the Code provides that a party with an interest in property proposed to be used, sold or leased by the debtor must receive adequate protection for such interest before the debtor may use, sell or lease such property. 11 U.S.C. § 363(e).

22.    Section 361 of the Code provides that when adequate protection is required under Section 363 of the Code, such adequate protection may be provided by, *inter alia*, "providing to such entity an additional or replacement lien to the extent that such stay, use, sale, lease, or grant results in a decrease in the value of such entity's interest in such property." 11 U.S.C. § 361(2).

23.    The entitlement to and measure of the protection required is always determined by the extent of the anticipated or actual decrease, if any, in the value of the secured creditor's collateral during course of the bankruptcy case. *See In re First South Savings Assoc.*, 820 F.2d 700, 710 (5th Cir.1987).

24.    Adequate protection requires only that the value of the creditor's interest in the cash collateral be protected from diminution while the Debtors are using the cash collateral. *United Savings Association of Texas v. Timbers of Inwood Forest Assoc., Ltd.*, 484 U.S. 365 (1988). Said another way, it is "intended by the Bankruptcy Code only to assure that a secured creditor, during the pendency of a bankruptcy case, does not suffer a loss in the value of its interest in property of the bankruptcy estate." *In re Markos Gurnee Partnership*, 252 B.R. 712, 716 (Bankr.N.D.Ill.1997).

25.    In order to provide Gulabtech and Derrick Spatorico (collectively the "Lienholders") with adequate protection on account of the use of the Cash Collateral, the

Debtors propose to grant the Lienholders replacement liens (the "Replacement Liens") on the same types of post-petition property of the estates against which the Lienholders held liens as of the Petition Date. The Replacement Liens shall maintain the same priority, validity and enforceability as the Lienholders' pre-petition liens. The Replacement Liens shall be recognized only to the extent of the diminution in value of the Lienholders prepetition collateral after the Petition Date resulting from the Debtors' use of the Cash Collateral during the bankruptcy case. The Replacement Liens shall be recognized only as to the Debtors against which the Lienholders held valid prepetition liens.

26. The Cash Collateral will be used by the Debtors to maintain and preserve the value of their businesses consistent with prior practice. A large portion of the Debtors' clientele consists of entities that make frequent repeat use of the Debtors' services, including law enforcement agencies, private investigators, legal professionals, bail bondsmen, collection and security agencies and employment recruiters. An interruption of the Debtors' services carries a substantial risk that such clientele may be permanently lost to competitors of the Debtors. The Debtors' use of the Cash Collateral for the operation and maintenance of their businesses constitutes additional adequate protection. *See In re Prichard Plaza, L.P.*, 84 B.R. 298 (Bankr. D. Mass. 1988)(use of rents to maintain and preserve property constitutes adequate protection).

27. Since the Debtors continue to generate revenue from their businesses, granting the Replacement Liens suffices as adequate protection entitling the Debtors to use Cash Collateral. "This is because the lien on each month's rents replaces the lien on the prior month's rents, so there is a replacement lien of equal value under Section 361 of the Bankruptcy Code. Therefore, as long as the debtor generates a continuous income stream, the debtor's use of the rental income does not diminish the value of the collateral. The rationale is that the protected cash proceeds are

being used to generate new collateral which will be of at least equivalent value of those replaced." In re *Wrecclesham Grange, Inc.*, 221 B.R. 978, 981 (Bankr. M.D. Fla. 1997) (Use of continuous income stream does not diminish value of collateral because cash is used to generate new collateral subject to replacement liens) (citations omitted); *In re Mullen*, 172 B.R. 473, 477-78 (Bankr. D. Mass. 1994) (Use of rental stream provides adequate protection by creating new collateral to replace collateral used).

28. The value of the Lienholders' secured position will therefore be adequately protected during the Budget Period and the Replacement Liens constitute adequate protection within the meaning of the Code.

### V.    NOTICE

29. Pursuant to MLBR 4001-2(b), the Debtors will serve this Motion on (a) the Lienholders, (b) any taxing authority that has a claim against the estates, (c) the 20 largest unsecured creditors of each Debtor, (e) the Office of the United States Trustee, and (f) all parties who have filed a notice of appearance in these cases. The Debtors believe that such service provides sufficient notice in light of the nature of the relief requested and request that the Court approve such notice.

[REMAINDER OF PAGE INTENTIONALLY LEFT BLANK]

**WHEREFORE**, the Debtors respectfully request that this Court enter an Order, substantially in the form attached:

A. Approving the notice of this motion as described above;

B. Authorizing the Debtors to use Cash Collateral on an emergency basis pending the scheduling of a hearing on the continuing use of Cash Collateral;

C. Authorizing the Debtors to use Cash Collateral on a continuing basis in an amount necessary to conduct ordinary business operations;

D. Granting the Lienholders replacement liens in accordance with the terms of this Motion;

E. Granting such other relief as is just and proper.

        Respectfully submitted,

        LOCATEPLUS HOLDINGS CORPORATION,
        LOCATEPLUS CORPORATION, DATAPHANT,
        INC., CERTIFION CORPORATION,
        EMPLOYMENT SCREENING PROFILES, INC.,
        WORLDWIDE INFORMATION, INC.,

        By their proposed counsel,

        /s/ Natalie B. Sawyer
        Harold B. Murphy (BBO #362610)
        Natalie B. Sawyer (BBO #660072)
        MURPHY & KING P.C.
        One Beacon Street, 21st Floor
        Boston, MA 02108-3107
        Telephone: (617) 423-0400
        Facsimile: (617) 423-0498

Dated: June 21, 2011        nbs@murphyking.com

597531