UNITED STATES BANKRUPTCY COURT
FOR THE
DISTRICT OF MASSACHUSETTS

~~~~~~~~~~~~~~~~~~~~~~~~~~~~~

In re
**LOCATEPLUS HOLDINGS**                                    Chapter 11
**CORPORATION, et al.**                                    Case No. 11-15791-JNF
    Debtors                              (Jointly Administered)

~~~~~~~~~~~~~~~~~~~~~~~~~~~~~

**MEMORANDUM AND ORDER**

    Upon consideration of 1) the Motion of Greenberg Traurig LLP ("GT"), pursuant to Section 362 of the Bankruptcy Code, for Order Modifying the Automatic Stay or Declaring It Inapplicable, to Allow Ongoing Payment of Defense Costs under Executive and Organization Liability Insurance Policy ("GT's Lift Stay Motion"), pursuant to which GT seeks an order modifying the automatic stay or declaring it inapplicable to permit the payments to it under a directors and officers liability policy for defense costs incurred in representing Jon R. Latorella ("Latorella"), a former chief executive officer of LocatePlus Holdings Corporation ("LPHC"), in pending criminal and civil actions in the United States District Court for the District of Massachusetts, captioned, respectively, <u>United States v. Jon Latorella and James Fields</u>, 10-CR-10388-DPW and <u>Securities and Exchange Commission v. LocatePlus Holdings Corporation, Jon R. Latorella and James C. Fields</u>, 10-CV-11751-

1

DPW[1]  2) the Trustee's single Opposition both GT's Motion and S&W's Motion; 3) GT's Reply in Support of its Lift Stay Motion; 4) the Affidavit of Mark A. Berthiaume, Esq. in support of GT's Lift Stay Motion, in which he stated among other things:

> [T]hough Attorney Conti [counsel to LPHC] initially agreed to indemnify Mr. Latorella for the defense costs associated with the Government Investigation, counsel for LocatePLUS subsequently took the position that LocatePLUS had not agreed to indemnify Mr. Latorella and that, notwithstanding the terms of its proposed corporate charter, it had the right under Delaware corporate law to disclaim its indemnification obligations and was doing so. Consistent with that position, LocatePLUS has never indemnified Mr. Latorella for his defense costs incurred in connection with the Government Investigation;

5) the representations and arguments made by counsel to the parties at the hearing on GT's Lift Stay Motion and S&W's Lift Stay Motion and the Trustee's Opposition held on October 20, 2011; 6) GT's Supplemental Memorandum in Support of its Lift Stay Motion to which it attached the Affidavit of Latorella;[2] 7) the Trustee's Additional Supplement in Further

---

[1] Indeed, GT's Lift Stay Motion is identical in all material respects to the Motion of Sullivan & Worcester LLP ("S&W"), pursuant to Section 362 of the Bankruptcy Code, for Order Modifying the Automatic Stay or Declaring It Inapplicable, to Allow Ongoing Payment of Defense Costs under Executive and Organization Liability Insurance Policy ("S&W's Lift Stay Motion"), pursuant to which S&W on behalf of its client, James C. Fields ("Fields"), seeks similar relief.  Indeed, GT in its Lift Stay Motion states: "As the facts and arguments set forth in the S&W [Lift Stay] Motion are, in all material respects, equally applicable to GT and Mr. Latorella, GT hereby joins in the S&W [Lift Stay] Motion and adopts the facts and arguments set forth therein."

[2] Latorella stated:

GT has served as my attorneys since March 2009 and it was with my knowledge that they submitted invoices for the legal fees and costs incurred on my behalf directly to the insurance carrier that issued the D&O policy to my former employer LocatePLUS Holdings Corporation. It was also my understanding that the insurance carrier has made payments directly to GT.

2

Support of his Opposition to GT's Lift Stay Motion to which he attached a payment schedule evidencing payments in excess of $800,000 to Latorella since 2006 for unknown purposes;[3] 8) GT's Additional Supplemental Memorandum in Support of its Lift Stay Motion; 9) the Trustee's Motion pursuant to Bankruptcy Rule 9019(a) Seeking Approval and Entry of the Stipulation and Order Resolving Motion by Sullivan & Worcester LLP and Joinder by Martin G. Weinberg, P.C. for Relief from the Automatic Stay to Permit Payments from D&O Policy, pursuant to which the Trustee, S&W, and Martin G. Weinberg, P.C. ("Weinberg"), Latorella's proposed successor counsel in the pending criminal case, seek Court approval of a stipulation containing the following material terms:

> Relief from the automatic stay shall be granted to Fields, Latorella, Weinberg and S&W to the extent, but only to the extent, to permit, out of the balance of remaining Policy limits, the Provider to pay up to One Million Seven Hundred and Seventy Thousand Dollars ($1,770,000) (the "Legal Funds") in legal fees, litigation expenses and defense costs (but for no other purpose) to Fields, Latorella, Weinberg and S&W;
>
> The Trustee may commence at his discretion other actions that my implicate the Policy, however, the Trustee shall not directly or indirectly take any steps to interfere with the availability of the Legal Funds for Weinberg and S&W;
>
> Upon request, S&W will provide past time sheets to counsel for the Trustee, in redacted form, to enable the Trustee's assessment of the reasonableness of fees charged by other counsel for other former directors, officers or employees of the Debtors who have previously made claims against the Policy;
>
> Upon request, S&W and Weinberg will provide summary monthly invoices to the Trustee and if a dispute arises between the Trustee and either S&W or

---

I have reviewed the motion filed by GT and have no objections to it.

[3] The bulk of these payments were made before policy period.

>Weinberg concerning the amount of fees, then the Parties would first seek the intervention of the District court in which the Action is pending in order to resolve such dispute in such a manner that would reasonably ensure that the Sixth Amendment rights of Latorella and Fields are adequately protected within that proceeding;

10) the additional term of the Stipulation among the Trustee, S&W, and Weinberg which provides: "The Parties acknowledge that as to Fields and S&W the allocation of Legal Funds represent a compromise and cap on total outstanding and future fees and not a flat fee, but nothing herein precludes the Carrier's right to pay out of the Legal Funds on such schedule or conditions as the Carrier, Fields and S&W may agree.;" 11) the material terms of the Executive and Organization Liability Insurance Policy, Number 01-285-50-90, covering claims made between September 30, 2008 and September 30, 2009 up to an aggregate limit of $5,000,000, which include the following pertinent provisions:

>**1. INSURING AGREEMENTS**[4]
>
>With respect to Coverage A, B and C, solely with respect to Claims first made against an Insured during the Policy Period or the Discovery Period (if applicable) and reported to the Insurer pursuant to the terms of this policy, and subject to the other terms, conditions and limitation of this policy, this policy affords the following coverage:
>
>**COVERAGE A: EXECUTIVE LIABILITY INSURANCE**
>
>This policy shall pay the Loss of any Insured Person arising from a Claim made against such Insured Person for any Wrongful Act of such Insured

---

[4] The named entity under the policy is LPHC. Pursuant to paragraph 2 of the policy, "'Insured' means any (1) Insured Person; or (2) Organization, but only with respect to a Securities Claim." "'Organization' means: (1) the Named Entity; (2) each Subsidiary; and (3) in the event a bankruptcy proceeding shall be instituted by or against the foregoing entities, the resulting debtor-in possession (or equivalent status outside the United States), if any."

4

Person, *except when and to the extent that an Organization has indemnified such Insured Person*. Coverage A shall not apply to Loss arising from a Claim made against an Outside Entity Executive.

**COVERAGE B: ORGANIZATION INSURANCE**

(i) Organization Liability: This policy shall pay the Loss of any Organization arising from a Securities Claim made against such Organization for any Wrongful Act of such Organization.

(ii) Indemnification of an Insured Person: This policy shall pay the Loss of an Organization arising from a Claim made against an Insured Person (including an Outside Entity Executive) for any Wrongful Act of such Insured Person, but only to the extent that such Organization has Indemnified such Insured Person.

\*\*\*

**19. BANKRUPTCY**

Bankruptcy or Insolvency of an Organization or any Insured Person shall not relieve the Insurer of any of its obligations hereunder.

*It is further understood and agreed that the coverage provided under this policy is intended to protect and benefit the Insured Persons.* Further, if a liquidation or reorganization proceeding is commenced by the Named Entity [LPHC] and/or any other Organization (whether voluntarily or involuntarily) under Title 11 of the United States Code (as amended), or any similar state, local or foreign law (collectively "Bankruptcy Law") then, in regard to a covered Claim under this policy, the Insureds hereby:

(a) waive and release any automatic stay or injunction to the extent it may apply in such proceeding to the proceeds of this policy under such Bankruptcy Law; and

(b) agree not to oppose or object to any efforts by the Insurer or any Insured to obtain relief from any stay or injunction applicable to the proceeds of this policy as a result of the commencement of such liquidation or reorganization proceeding.

\*\*\*

**22. ORDER OF PAYMENT**

In the event of Loss arising from a covered Claim for which payment is due under the provisions of this policy, then the Insurer shall in all events:

(a) *first, pay Loss for which coverage is provided under Coverage A . . . of this policy*; then

(b) only after payment of Loss has been made pursuant to Clause 22(a) above, with respect to whatever remaining amount of the Limit of Liability is available after such payment, at the written request of the chief executive officer of the Named Entity, either pay or withhold payment of such other Loss for which coverage is provided under Coverages B(i) . . . of this policy.

\*\*\*

The bankruptcy or insolvency of any Organization or any Insured Person shall not relieve the Insurer of any of its obligations to prioritize payment of covered Loss under this policy pursuant to this Clause 22. . .

(emphasis supplied); and 12) the case law cited by the parties in their respective papers and, in particular, In re Downey Fin. Corp., 428 B.R. 595 (Bankr. D. Del. 2010) (construing insurance policy with materially identical provisions, including the Order of Payment provision); In re Allied Digital Techs., Inc., 306 B.R. 505 (D. Del. 2004); and In re Beach First Nat'l Bancshares, Inc., 451 B.R. 406 (Bankr. D.S.C. 2011), the Court finds and rules as follows:

1. GT has standing to seek relief from the automatic stay in view of its status as a third party beneficiary of the policy, Attorney Berthiaume's Affidavit, and Latorella's Affidavit.

2. GT has established cause for relief from the automatic stay. *See* In re Downey Fin. Corp., 428 B.R. at 608. LPHC purchased the policy for the benefit of its directors and officers, one of whom was represented by GT.

The policy expressly states that purpose and provides that coverage of the defense costs of directors and officers has priority over coverage of loss sustained by LPHC. Even assuming LPHC has an interest in the proceeds owing to the pendency of the civil action commenced by the Securities and Exchange Commission against it, that action is stayed. Absent relief from the automatic stay, GT would be substantially and irreparably harmed as payment of fees and expenses for work it performed in reliance upon Coverage A would be exceedingly problematic. *See* In re Beach First Nat'l Bancshares, Inc. 451 B.R. at 410-11.[5]

---

[5] In Beach First Nat'l Bancshares, Inc., the court observed:

Trustee complains that the lifting of the stay to allow Movants to receive proceeds to pay their defense costs is improper because whatever is paid to Movants will reduce her recovery as the plaintiff. In Allied Digital Technologies, the same argument was presented. In response, the court stated:

> The Trustee's real concern is that payment of defense costs may affect his rights as a plaintiff seeking to recover from the D & O Policy rather than as a potential defendant seeking to be protected by the D & O Policy. In this way, Trustee is no different than any third party plaintiff suing defendants covered by a wasting policy. No one has suggested that such a plaintiff would be entitled to an order limiting the covered defendants' rights to reimbursement of their defense costs. The bottom line is that the Trustee seeks to protect the amount he may receive in his suit against the directors and officers while limiting coverage for the defense costs of the directors and officers. This is not what the directors and officers bargained for. In bringing the action against the directors and officers, the Trustee knew that the proceeds could be depleted by legal fees and he took that chance. The law does not support the Trustee's request to regulate defense costs.

Allied Digital Techs., 306 B.R. at 513. *See also* Laminate Kingdom, 2008 WL 1766637, at *4. This Court agrees wholeheartedly with the Allied Digital court's statement; Trustee's argument fails. The Policy should be used for its intended purpose.

3. The Trustee's argument that a right to indemnification does not equate to an event of payment as a result of the Debtor's corporate charter is unconvincing in view of any reasonable interpretation of the policy and disingenuous as the Debtor advanced no funds to Latorella by way of indemnification of his defense costs and the terms of the Trustee's proposed settlement with S&W and Weinberg are inconsistent with that position. The Trustee failed to establish that any of the $800,000 payments to Latorella in her referenced in his Additional Supplement in Further Support if his Opposition were pursuant to indemnification obligations.

In view of the foregoing, the Court grants GT's Lift Stay Motion.

By the Court,

*[signature: Joan N. Feeney]*

Joan N. Feeney
United States Bankruptcy Judge

Dated: October 31, 2011

---

451 B.R. at 411.